# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date:  **AUGUST 22, 2017**

**No. 34,387**

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.

**PEDRO CAZARES, a/k/a**
**PEDRO LUIS CASARES,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Judith K. Nakamura, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellant

Robert E. Tangora, L.L.C.
Robert E. Tangora
Santa Fe, NM

for Appellee

**OPINION**

**ZAMORA, Judge.**

{1}     The State appeals from the district court's order excluding witnesses resulting in the dismissal of the case. This order was entered because of discovery rule violations by the State. The exclusion included the State's witnesses that Defendant requested to interview, but had not been given the opportunity to interview before the district's scheduling deadline. Defendant's motion to dismiss was granted once the State conceded it could not proceed to trial without the excluded witness testimony. We affirm the district court's order.

**BACKGROUND**

{2}     Defendant was charged with drug trafficking and possession of drug paraphernalia. A scheduling order was entered on August 20, 2014, that set forth various deadlines, including witness interviews to be conducted by October 24, 2014, and substantive motions to be filed by November 7, 2014. The prosecutor filed a "State's Addendum Witness & Exhibit List" on August 27, 2014, listing eight law enforcement officers and the names of three chemists. Of the three chemists listed by the State, it was the chemist who analyzed the drugs, Manuel Gomez (Gomez) who would be testifying at trial. On the same day, the prosecutor sent an email to defense counsel stating, "Please provide me with dates and times that are convenient for you

for witness interviews." Defense counsel responded by providing three dates of availability in September for interviews, and stated, "Please let me know, immediately, when the interviews are scheduled or if these dates don't work." The prosecutor subsequently informed defense counsel that "witness interviews" were scheduled for September 23, 2014. Only two officers appeared for interviews on that date. Defense counsel made another request to schedule interviews for the remaining nine witnesses. The interviews were scheduled for October 14, 2014, at which only two more officers appeared.

{3}     Gomez did not show up on either September 23, 2014 or October 14, 2014. On October 16, 2014, defense counsel informed the prosecutor that she was only available on October 21, 2014, for the remaining interviews because she was going to be on vacation after that date. The prosecutor informed defense counsel that a telephonic interview with Gomez would be set up for that date. On October 17, 2014, the prosecutor discovered that Gomez would be out of town and would not be available to be interviewed; however, he did not pass along this information to defense counsel. The prosecutor never sought an extension of the district court's interview deadline. The State asserts that emails were sent to defense counsel one day before the deadline on October 23, 2014, and one week after the deadline had passed

on October 30, 2014. The prosecutor received no response from defense counsel to his emails.

{4}     On October 31, 2014, defense counsel filed a motion to exclude witnesses from the State's list who were not made available to be interviewed before the district court's October 24, 2014 deadline. Defense counsel stated that Defendant was prejudiced due to an inability to conduct witness interviews and prepare substantive motions prior to a court ordered deadline of November 7, 2014. The prosecutor claimed that it made a good faith effort to comply with the court deadlines, and any violation of the district court's order was not intentional.

{5}     A hearing was held on December 2, 2014. At that hearing the district court specifically asked the prosecutor why the district attorney's office did not set up an interview for Gomez with the first interviews scheduled for September 23, 2014. The prosecutor informed the court that a chemist's interview is typically set up last, because the interviews with law enforcement officers give the State a sense of the sufficiency of its evidence, or the strengths and weaknesses of the State's case, and whether there is a possibility of reaching an agreement in a case. The prosecutor also stated that, since the "trial [was] not scheduled until April[2015 he] relaxed a little bit." It was also revealed during the motion hearing that while three chemists had been identified and because Defendant had not received the drug analyst's report,

3

defense counsel did not know if one or all three chemists would actually be testifying. The district court entered an order excluding those witnesses that had not been interviewed and ultimately dismissed the case. The State appeals. On appeal, the State informs this Court that of the witnesses excluded under the district court's order, only Gomez, the chemist, would have been called to testify at trial.

**DISCUSSION**

{6} It is within a trial court's discretion to impose sanctions for violation of a discovery order when the violation results in prejudice to the opposing party. *State v. Bartlett*, 1990-NMCA-024, ¶ 4, 109 N.M. 679, 789 P.2d 627. To determine whether imposition of the sanction of excluding witnesses was proper in this case, we must look at: (1) the culpability of the State, (2) the prejudice to Defendant, and (3) the availability of lesser sanctions. *See State v. Le Mier*, 2017-NMSC-017, ¶ 15, 394 P.3d 959 (citing to *State v. Harper*, 2011-NMSC-044, ¶ 15, 150 N.M. 745, 266 P.3d 25). Our Supreme Court clarifying *Harper* proclaimed that these applicable standards are not "so rigorous" that a trial court may only impose sanctions for discovery violations that are "egregious, blatant, and an affront to their authority." *Le Mier*, 2017-NMSC-017, ¶ 16. Rather, in order to promote efficiency, manage its docket, and ensure that judicial resources are not wasted, a court may impose "meaningful sanctions where discovery orders are not obeyed and a party's conduct injects

4

needless delay into the proceedings." *Id.* ¶¶ 16, 19. Our Supreme Court further articulated that "our courts are encouraged to ensure the timely adjudication of cases, to proactively manage their dockets, and to utilize appropriate sanctions to vindicate the public's interest in the swift administration of justice." *Id.* ¶ 29.

{7} The district court has broad discretionary power to impose sanctions for discovery violations, and there is no abuse of that discretion unless the court's ruling is "clearly against the logic and effect of the . . . circumstances of the case[,]" and not justified by reason. *Id.* ¶ 22. "In reviewing the district court's decision, [appellate courts] view[] the evidence . . . and all inferences . . . in the light most favorable to the district court's decision." *Id.* We now turn to the considerations set out in *Harper* and quantified by *Le Mier*.

**Culpability of the State**

{8} By entering the scheduling order with the requisite deadlines, the district court was exercising its authority to ensure the timely adjudication of the case and was proactively managing its docket. *See Le Mier*, 2017-NMSC-017, ¶ 29. The scheduling order with the appropriate deadlines was clear and unambiguous. The prosecution's failure to: (a) follow the clear and unambiguous witness-interview deadline, (b) seek an extension of that deadline, (c) identify the witnesses it actually intended to call at

trial, and (d) ensure defense counsel was provided with a copy of the drug analyst's report, is more than enough proof of the State's culpable conduct.

{9}    Immediately following the filing of the amended witness list by the State, defense counsel made attempts to interview all of the witnesses on the list. She made herself available to conduct interviews on three separate dates. When only four of the eight officers and none of the three chemists appeared for the interviews set on September 23, 2014 and October 14, 2014, defense counsel once again made herself available for witness interviews before the discovery deadline. Unbeknownst to defense counsel, Gomez was a critical witness for the State's case against Defendant. However, the State specifically failed to schedule an interview with Gomez for either of those dates.

{10}    The prosecutor apprised the district court that the witness list included every possible witness, but explained that the witnesses "gradually either come in for the interview or eliminate themselves." For example, two Homeland Security officers were difficult to schedule because of their positions, and two deputies said they had nothing to do with the case. Despite knowing that some of the original eleven witnesses listed by the State would not be called to testify at trial, the prosecutor did not file an amended witness list at any time. It was not until the motion hearing that

6

the State conceded that the only witnesses that needed to be interviewed were the four that defense counsel had already interviewed and Gomez.

{11}     The prosecutor contended that he made a good faith effort to reschedule an interview with Gomez, and "made attempts to comply with the court imposed deadlines." Although the prosecution worked with defense counsel to schedule Gomez's telephonic interview on October 21, 2014, the State knew as of October 17, 2014, that Gomez was not available on October 21, 2014. However, the prosecutor failed to inform defense counsel until October 21, 2014. It was not until October 23, 2014, two days after the cancellation of Gomez's telephonic interview, and one day before the witness-interview deadline, that the State made an attempt to contact Gomez and defense counsel to reschedule the interview. He then waited another week, well after the deadline had passed and while defense counsel was on vacation, to send another email to attempt to reschedule the interview.

{12}     In the State's response to Defendant's motion to exclude witnesses, the prosecutor disingenuously states that he "attempted to reschedule the interview with [Gomez] but did not receive a response from defense counsel." When asked by the district court if there was a reason why the State did not seek an extension of the deadline, the prosecutor did not provide an explanation. *See Harper*, 2011-NMSC-044, ¶ 22 (stating that where the state assumed responsibility of

7

scheduling interviews with witnesses, the state had an obligation to follow through in good faith). Additionally, the State admitted that it delayed scheduling Gomez for an interview because of the internal policy of the district attorney's office and he "relaxed" because the trial date was approximately four months away.

**Prejudice to Defendant**

{13}   As of the deadline for witness interviews, even though defense counsel provided a number of dates that she would be available, she had been able to interview only four witnesses out of eleven witnesses on the State's list. In particular, defense counsel was not able to interview Gomez, a witness critical to the State's case. As a result of the State's actions and inactions, defense counsel was unable to interview Gomez in a timely fashion and could not comply with some of the existing deadlines for filing substantive motions—particularly fact specific motions pertaining to several of the State's witnesses who had not been interviewed and the drug analysis report that had not been received. *See id.* ¶ 19 (noting that delayed disclosure results in prejudice when the delay prevents defense counsel from effectively preparing and presenting the defendant's case); *see also Le Mier*, 2017-NMSC-017, ¶ 25 ("When a court orders a party to provide discovery within a given time frame, failure to comply with that order causes prejudice both to the opposing party and to the court.").

8

{14}    It is important to note that since defense counsel was not provided with the drug analyst's report, she had no information as to which chemist prepared the report or what information to review in preparation of the chemist's interview. Although the prosecutor stated that defense counsel was provided with a copy of the drug analyst's report, he did not have an email receipt and the discovery receipt for the report was not signed, indicating that it was never received by defense counsel.

{15}    The State sidestepped its responsibility to comply with the scheduling order and is now suggesting that it was Defendant's responsibility to file a request for "a brief extension of the pretrial deadlines" to allow for time to interview Gomez and to be able to file a motion based on the interview without delaying the trial, which was scheduled "four months away when the [district] court dismissed the case." The State did not make such a suggestion to the district court, and the district court was not required to sua sponte conceive of a means of alleviating the prejudice caused by the State's discovery violations. *Cf. State v. Martinez*, 1998-NMCA-022, ¶ 13, 124 N.M. 721, 954 P.2d 1198 (noting that, while a continuance might resolve prejudice to the moving party, the district court is not required to "cure" a discovery violation by continuing a trial (internal quotation marks and citation omitted)). The State neither has the authority, nor is in a position to delegate its responsibility to follow the clear and unambiguous scheduling order issued by the district court. Blaming defense

counsel in this case was not warranted. The State recognized and accepted the deadlines imposed by the district court, only to fail to comply with them and expend the court's time and judicial resources to address those failures. *See Le Mier*, 2017-NMSC-017, ¶ 26.

**Availability of Lesser Sanctions**

{16}    Defendant argues that the State failed to properly preserve the issue of "whether the district court's discovery sanction is too severe" because the State did not request a lesser sanction. The State does not argue that the district court should have imposed a lesser sanction, but instead argues that it was an abuse of discretion to sanction the State by excluding Gomez as a witness. Nonetheless, the district court found that it had considered lesser sanctions and determined that exclusion was the appropriate remedy. No argument regarding the consideration of lesser sanctions has been made to this Court, therefore we will not consider it. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 (holding that appellate courts will not raise or guess at a party's arguments); *cf. Le Mier*, 2017-NMSC-017, ¶ 27 (stating that the court is not required to consider every possible lesser sanction before deciding on witness exclusion; the court is only required to determine the least severe sanction for the situation that accomplishes the desired result).

**CONCLUSION**

10

{17}     The State's disregard of the district court's order was appropriately addressed by the district court with its sanction of excluding the witnesses testimony, resulting in the dismissal of the case, thereby "ensur[ing] . . . the [district] court's authority to efficiently administer the law and . . . compliance with its orders[.]" *Le Mier*, 2017-NMSC-017, ¶ 29. The State took on the responsibility of scheduling interviews, but failed to ensure that all listed witnesses would attend the interviews, failed to inform defense counsel that most of the witnesses would not be called at trial, delayed scheduling an interview for a critical witness until the deadline was looming, and then failed to inform defense counsel until the date of the interview that the critical witness was unavailable. Additionally, the State did not adequately provide defense counsel with the drug analyst's report.

{18}     The State attempted to partially excuse its behavior by referring to an internal policy of delaying interviews for certain witnesses in order to assess the strength of the case based on any other interviews. The prosecutor's decision not to be diligent with his discovery obligations because the trial was four months away was a reckless rationale for failing to abide by the district court's ordered discovery deadline. The State's conduct resulted in prejudice to Defendant and to the district court. The decision to impose the sanction of exclusion of the State's witnesses is not clearly against the logic and effect of the circumstances in this case. The district court did not

abuse its discretion in excluding all non-interviewed witnesses, and in particular Gomez, or by ultimately dismissing the case.

{19}     For the foregoing reasons, we affirm the district court's order.

{20}     **IT IS SO ORDERED.**

_____

**M. MONICA ZAMORA, Judge**

**I CONCUR:**

_____

**STEPHEN G. FRENCH, Judge**

**TIMOTHY L. GARCIA, Judge (specially concurring).**

**GARCIA, Judge (specially concurring).**

{21} I write to specially concur with the result reached by the majority but disagree with various negative references used by the majority regarding the prosecutor's decisions and behavior in this case. *See* Majority Opinion ¶¶ 12, 17-18. Clearly the State took a risk by allowing the interview deadline to pass without having Gomez interviewed by defense counsel. However, this occurred with over four months remaining before trial—enough time for the district court to take action to rectify the error and resolve any prejudice to Defendant prior to trial.

{22} I consider the State's failure to ask the district court to extend the original interview deadlines or impose a less severe sanction to eliminate any pretrial prejudice to Defendant as the critical errors in this case. This tactical decision proved to be fatal to the State's position. Clearly the district court had the discretion and responsibility to consider and impose a less severe sanction against the State. *See Harper*, 2011-NMSC-044, ¶¶ 16, 20-27. Without even requesting that the district court consider other options or less severe sanctions, the majority is correct—the district court did not abuse its discretion in this particular case by imposing a more severe sanction—excluding testimony by the State's witnesses who had not been interviewed, specifically Gomez.

13

{23} Without adopting all the language and reasoning used by the majority, I specially concur with the decision to affirm the district court's order.

_____

**TIMOTHY L. GARCIA, Judge**

14